1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RANDY M. CORDERO,                          No.  2:13-cv-1551 JAM KJN P

12                  Plaintiff,

13         v.                                     FINDINGS AND RECOMMENDATIONS

14    NICK GUZMAN, et al.,

15                  Defendants.

16

17    I.  Introduction

18         Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

19    to 42 U.S.C. § 1983.  For the reasons discussed herein, the undersigned recommends that

20    defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust

21    administrative remedies as to his claims against defendant Parra be granted.

22         Defendants filed a summary judgment motion as to the merits of plaintiff's claims, but

23    also on the grounds that plaintiff failed to exhaust his administrative remedies.  (ECF No. 50).

24    On April 20, 2015, the undersigned recommended that defendants' summary judgment motion be

25    granted as to defendants Mejia, Vincent, Smith and Bargarin, and as to plaintiff's negligence

26    claim against defendant Guzman.  (ECF No. 65.)  The undersigned recommended that

27    defendants' summary judgment motion be denied as to plaintiff's federal claims against

28    defendants Guzman and Parra.  (Id.)   In part, the undersigned found that he could not determine

1

1  from the record whether plaintiff exhausted his administrative remedies as to his claims against

2  defendant Parra.

3          In their objections to the findings and recommendations, defendants requested an

4  evidentiary hearing regarding plaintiff's exhaustion of administrative remedies as to his claims

5  against defendant Parra.  (ECF No. 67.)

6          On June 18, 2015, the Honorable John A. Mendez adopted the findings and

7  recommendations.  (ECF No. 71.)  However, Judge Mendez remanded this action to the

8  undersigned for an evidentiary hearing as to plaintiff's exhaustion of administrative remedies as

9  to his claims against defendant Parra.  (Id.)

10         On September 14, 2015, an evidentiary hearing was held.  Diana Esquivel appeared on

11  behalf of defendants.  Plaintiff appeared in pro se.

12         For the following reasons, the undersigned recommends that defendants' motion for

13  summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies as

14  to his claims against defendant Parra be granted.

15  II.  Legal Standard for Summary Judgment

16         Summary judgment is appropriate when it is demonstrated that the standard set forth in

17  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

18  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

19  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the

20  moving party always bears the initial responsibility of informing the district court of the basis for

21  its motion, and identifying those portions of "the pleadings, depositions, answers to

22  interrogatories, and admissions on file, together with the affidavits, if any," which it believes

23  demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S.

24  317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

25         "Where the nonmoving party bears the burden of proof at trial, the moving party need

26  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

27  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

28  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

2

1    committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

2    burden of production may rely on a showing that a party who does have the trial burden cannot

3    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

4    should be entered, after adequate time for discovery and upon motion, against a party who fails to

5    make a showing sufficient to establish the existence of an element essential to that party's case,

6    and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

7    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

8    necessarily renders all other facts immaterial."  Id. at 323.

9           Consequently, if the moving party meets its initial responsibility, the burden then shifts to

10   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

11   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

12   establish the existence of such a factual dispute, the opposing party may not rely upon the

13   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

14   form of affidavits, and/or admissible discovery material in support of its contention that such a

15   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

16   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

18   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

19   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

20   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

21   (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

22   1564, 1575 (9th Cir. 1990).

23          In the endeavor to establish the existence of a factual dispute, the opposing party need not

24   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

27   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

28   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

3

1    amendments).

2           In resolving a summary judgment motion, the court examines the pleadings, depositions,

3    answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R.

4    Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at

5    255. All reasonable inferences that may be drawn from the facts placed before the court must be

6    drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences

7    are not drawn out of the air, and it is the opposing party's obligation to produce a factual

8    predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F.

9    Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

10   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

11   some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could

12   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

13   trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

14          By contemporaneous notice provided on November 23, 2013, (ECF No. 26), plaintiff was

15   advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal

16   Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc);

17   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

18   III.  Plaintiff's Claims Against Defendant Parra

19          In March 2013, plaintiff was housed at California State Prison-Corcoran ("Corcoran").

20   Plaintiff alleges that on March 5, 2013, plaintiff telephoned his attorney to discuss filing a civil

21   suit against High Desert State Prison ("HDSP") and defendant Guzman. (ECF No. 4 at 6.) While

22   on the telephone, plaintiff became aware that defendant Parra was monitoring the call. (Id. at 6-

23   7.) Plaintiff also heard a distinct "click," which meant that the call was being monitored by

24   California Department of Corrections and Rehabilitation ("CDCR") staff. (Id. at 7.)

25          On March 5, 2013, plaintiff was assaulted by inmates Valdivia and Trejo of the Two-Five

26   gang. (Id.) Inmates Valdivia and Trejo later told plaintiff that they had conspired with defendant

27   Parra to assault plaintiff. (Id.) They explained that defendant Parra told them that plaintiff was

28   "dropping kites" on the Two-Five gang. (Id.) "Dropping kites" is prison slang for providing

                                                    4

1  prison staff with information about the members of the gang.  (Id.)  Plaintiff alleges that

2  defendant Parra conspired with inmates Valdivia and Trejo to assault him in retaliation for filing a

3  staff complaint against defendant Guzman.  (Id.)

4  IV.  Legal Standard for Exhaustion of Administrative Remedies

5        The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

6  brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

7  prisoner confined in any jail, prison, or other correctional facility until such administrative

8  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

9  requirement applies to all inmate suits about prison life, whether they involve general

10 circumstances or particular episodes, and whether they allege excessive force or some other

11 wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

12       Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

13 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

14 critical procedural rules[.]"  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  The Supreme Court has

15 also cautioned against reading futility or other exceptions into the statutory exhaustion

16 requirement.  See Booth, 532 U.S. at 741 n.6.  Moreover, because proper exhaustion is necessary,

17 a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

18 procedurally defective administrative grievance or appeal.  See Woodford, 548 U.S. at 90-93.

19 "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

20 review process in accordance with the applicable procedural rules,' [] - rules that are defined not

21 by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218

22 (2007) (quoting Woodford, 548 U.S. at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027

23 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

24 exhaustion.'") (quoting Jones, 549 U.S. at 218).

25       In California, prisoners may appeal "any policy, decision, action, condition, or omission

26 by the department or its staff that the inmate or parolee can demonstrate as having a material

27 adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).

28 On January 28, 2011, California prison regulations governing inmate grievances were revised.

Cal. Code Regs. tit. 15, § 3084.7.  Now inmates in California proceed through three levels of appeal to exhaust the appeal process:  (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level review may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services.  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and he or she must "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, §§ 3084.2(a)(4).  An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Bock, 549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[1] "that the burdens outlined in Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996), should provide the template for the burdens here."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).  A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino, 747 F.3d at 1172.  Once the

---

[1]  See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a] defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031. Relevant evidence includes statutes, regulations, and other official directives that explain the scope of the administrative review process.  Id. at 1032.

1  defense meets its burden, the burden shifts to the plaintiff to show that the administrative

2  remedies were unavailable.  See Albino, 697 F.3d at 1030-31.

3      A prisoner may be excused from complying with the PLRA's exhaustion requirement if

4  he establishes that the existing administrative remedies were effectively unavailable to him.  See

5  Albino, 747 F.3d at 1172-73.  When an inmate's administrative grievance is improperly rejected

6  on procedural grounds, exhaustion may be excused as effectively unavailable.  Sapp v. Kimbrell,

7  623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir.

8  2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable");

9  Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (exhaustion excused where futile); Brown

10  v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where

11  appeal granted at second level and no further relief was available).

12      Where a prison system's grievance procedures do not specify the requisite level of detail

13  for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

14  requirement if it "alerts the prison to the nature of the wrong for which redress is sought."  Griffin

15  v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  "A grievance need not include legal terminology

16  or legal theories unless they are in some way needed to provide notice of the harm being grieved.

17  A grievance also need not contain every fact necessary to prove each element of an eventual legal

18  claim.  The primary purpose of a grievance is to alert the prison to a problem and facilitate its

19  resolution, not to lay groundwork for litigation."  Griffin, 557 F.3d at 1120.

20      If under the Rule 56 summary judgment standard, the court concludes that plaintiff has

21  failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

22  Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds by Albino,

23  747 F.3d 1162.

24  V.  Background re:  Summary Judgment Motion

25      In the original summary judgment motion, defendants presented the following evidence in

26  support of their claim that plaintiff failed to exhaust administrative remedies with respect to his

27  claims against defendant Parra.

28  ////

7

1    Defendants argued that between November 8, 2011, and July 16, 2013, plaintiff submitted

2  two appeals that were accepted for third level review, HDSP 11-1606 and HDSP 12-0043.  (ECF

3  No. 50-11 at 2.)  HDSP 11-1606 pertained to the November 9, 2011 incident involving defendant

4  Guzman at HDSP  (ECF No. 50-13 at 37-40.).  In HDSP 12-0043, plaintiff challenged the finding

5  of guilty in a disciplinary action based on the November 9, 2011 incident.  (Id. at 46-47.)

6    Defendants stated that on March 10, 2013, plaintiff submitted appeal CSPC 13-2073

7  concerning the March 5, 2013 assault by inmates Valdivia and Trejo and his claims that

8  defendant Burgarin ignored his safety concerns and that defendant Parra ordered the assault.  (Id.

9  at 52-55.)  Defendants stated that this appeal was rejected at the Director's Level because plaintiff

10  did not submit the necessary supporting documents.  (Id. at 75.)  The appeal identified the missing

11  documents as "CDCR Form 837 Crime/Incident Report (parts A, B, & C) –all pages."  (Id.)

12  Defendants stated that despite being informed of the reasons this appeal was rejected, plaintiff did

13  not cure the defect and resubmit the appeal.

14    The April 20, 2015 findings and recommendations found that the record was not clear

15  with regard to whether plaintiff exhausted his administrative remedies as to his claims against

16  defendant Parra:

> On March 10, 2013, plaintiff filed grievance 13-2073 raising his claims against defendant Parra.  (ECF No. 57 at 75.)  This grievance was processed as a staff complaint apparently based on plaintiff's allegations that defendant Parra facilitated the attack by the other inmates on plaintiff.  The first level response is unclear.  (Id. at 81.)  However, it appears to have been granted in part.  (Id.)  Plaintiff's appeal was accepted at the second level of review and also granted in part.  (Id. at 82.)  The second level response states that on March 5, 2013, Sergeant Nadel conducted a videotaped interview with plaintiff.  (Id.)  The response describes plaintiff's statements made during the interview.  (Id.)  The response further states that the following witnesses were questioned regarding the grievance:  inmate Trejo, inmate Valdivia, Officer Uribe, Officer Trevino.  (Id. at 87.)  The response states that the following information was reviewed as a result of plaintiff's allegations:  plaintiff's 602 and 602A, plaintiff's disability and effective communication report, sign-in/out sheets for Facility 3B, and Incident Package 837 Log # COR 03B-13-03-0129.  (Id.)
>
> Plaintiff's third level appeal of grievance 13-2073 was rejected at the third level of review because the appeal was missing the 837 Crime Report.  (Id. at 85.)

In his opposition, plaintiff argues that he submitted requests to prison staff for the CDCR 837 incident report but received no response. (ECF No. 60 at 40.) Plaintiff also argues that he, plaintiff, was not charged with a prison disciplinary for the altercation involving inmates Valdivia and Trejo. (ECF No. 60. at 41.) Plaintiff argues that he would have received the CDCR 837 incident report had he, plaintiff, been charged with a rules violation involving that incident. (Id.)

The undersigned is puzzled by the fact that grievance 13-2073 was considered on the merits at the second level of review, which included review of the 837 Crime Report, but rejected at the third level of review based on plaintiff's failure to include the 837 Crime Report. Plaintiff's statements in his opposition indicate that plaintiff did not possess a copy of the 837 Crime Report, suggesting that the second level reviewer independently obtained the 837 Crime Report in order to evaluate plaintiff's grievance. If the second level reviewer was able to obtain this report, then it is unclear why the third level reviewer could also not obtain this report, which was apparently not readily available to plaintiff. Without further explanation of these apparent discrepancies in review procedures between the second and third level of review, the undersigned cannot determine whether 13-2073 was properly rejected at the third level of review on procedural grounds. Accordingly, defendant Parra should not be granted summary judgment on the grounds that plaintiff failed to exhaust administrative remedies.

(ECF No. 65 at 13-14.)

VI.  The Evidentiary Hearing

At the September 14, 2015 evidentiary hearing, the parties presented evidence addressing whether appeal no. 13-2073 was properly rejected at the third level of review based on plaintiff's failure to include the 837 Crime Report. The undersigned summarizes the relevant testimony herein.

*Plaintiff*

Plaintiff testified that he obtained two pages of the 837 Crime Report from inmate Trejo through a "kite." Plaintiff attached these two pages to grievance 13-2073. Plaintiff testified that he asked inmate Trejo for the rest of the report, but received no response. Plaintiff also testified that an administrative segregation ("ad seg") sergeant told him that he was not entitled to a copy of the 837 Crime Report because he was not one of the "aggressors."

Plaintiff went on to testify regarding his efforts to obtain the entire 837 Crime Report. Plaintiff testified that while he was in ad seg, he submitted a Request for an Interview Form 22

9

1  requesting a copy of the report.  Plaintiff testified that at that time, the Form 22s provided to

2  inmates in ad seg did not have carbon copies allowing the inmates to retain a copy of the request.

3  For that reason, plaintiff did not have a copy of the Form 22 request he allegedly submitted.

4  Plaintiff testified that he received no response to this request.

5          Plaintiff also testified that while housed at Corcoran, he submitted "probably two or three

6  602s," regarding his attempts to obtain the 837 Crime Report.  Plaintiff also testified that he made

7  "a bunch of verbal requests" for the 837 Crime Report at the door.  Plaintiff testified that he could

8  not remember the names of the ad seg officers who told them that he was not entitled to the 837

9  Crime Report.  Plaintiff testified that he could not remember if he submitted his grievances

10 requesting the 837 Crime Report before or after he was told that he was not entitled to a copy of

11 the 837 Crime Report by the ad seg officers.

12         Plaintiff testified that on April 22, 2013, he was transferred to Pleasant Valley State Prison

13 ("PVSP").  Plaintiff received the second level response to his grievance no. 13-2073 while housed

14 at PVSP.  On May 27, 2013, while housed at PVSP, plaintiff submitted his third level appeal of

15 grievance no. 13-2073.  On or around July 8, 2013, plaintiff received a letter from the CDCR

16 Office of Appeals rejecting his third level grievance for failing to include the entire 837 Crime

17 Report.  This form, defendants' Exhibit C, states, in relevant part:

18          Your appeal has been rejected pursuant to the California Code of
           Regulations, Title 15, Section (CCR) 3084.6(b)(7).  Your appeal is
19          missing necessary supporting documents as established in CCR
           3084.3.  All documents must be legible (if necessary, you may
20          obtain copy(ies) of requested documents by sending a request with
           a signed trust withdrawal form to your assigned counselor).  Your
21          appeal is missing:

22          *CDCR Form 837, Crime/Incident Report (Parts A, B and C)—all
           pages.
23
            ****
24
            Be advised that you cannot appeal a rejected appeal, but should take
25          the corrective action necessary and resubmit the appeal within the
           timeframes specified in CDCR 3084.6(a) and CCR 3084.8(b).
26          Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that
           appeal may not be resubmitted.  However, a separate appeal can be
27          filed on the cancellation decision.  The original appeal may only be
           resubmitted if the appeal on the cancellation is granted.
28

                                              10

1    Plaintiff testified that he did not resubmit his appeal because he was unable to obtain the

2    entire 837 Crime Report.

3    Plaintiff testified that he could not recall whether he wrote to the Office of Appeals to

4    inform them that he was unable to obtain a complete copy of the 837 Crime Report.  Plaintiff also

5    testified that he did not think he ever wrote to the Office of Appeals to explain the efforts he made

6    to obtain a copy of the entire 837 Crime Report or to ask for assistance in obtaining the report.

7    Plaintiff testified that he did not submit a trust withdrawal form to his PVSP counselor to obtain a

8    copy of the 837 Crime Report, as the response to the third level grievance advised.  Plaintiff

9    testified that at the time he received the third level response rejecting his grievance, he did not

10   know how to submit a signed trust withdrawal form to his counselor requesting documents.

11   Plaintiff testified that after his transfer to PVSP, he allegedly wrote to the Corcoran

12   Appeals Coordinator asking for a copy of the entire 837 Crime Report, but did not receive a

13   response.

14   Plaintiff also testified that while housed at PVSP he did not request a copy of the 837

15   Crime Report because he did not want to bring up the attack by inmates Valdivia and Trejo while

16   he was at PVSP or any other prison because he wanted to "keep it quiet."  Plaintiff testified that

17   he was afraid of retaliation from members of the Two-Five prison gang if he mentioned the

18   incident at other institutions.  Plaintiff was also concerned that prison officials at other institutions

19   would retaliate against him if they knew he was pursuing his grievance and suing other officers.

20   Plaintiff testified that on July 24, 2013, he was transferred to the California Institution for

21   Men ("CIM"), where he stayed for two days.  Plaintiff testified that on or around July 26, 2013,

22   he was transferred to the R.J. Donovan Correction Prison ("RJDCP").  Plaintiff has not

23   transferred away from RJDCP and is still housed there.  Plaintiff testified that since being housed

24   at RJDCP, he has not asked his counselor for a copy of the 837 Crime Report or submitted a trust

25   withdrawal or grievance in an effort to obtain the 837 Crime Report.

26   Plaintiff testified that he did not make better attempts to obtain the 837 Crime Report

27   because staff at Corcoran told him that he was not entitled to the report as he was the victim

28   rather than the aggressor.

1    Plaintiff testified that in connection with the instant action, he kept a journal or log of

2    everything that occurred.  Plaintiff admitted that these notes did not include the names of the

3    Corcoran ad seg officers to whom he made his requests for the 837 Crime Report.  Plaintiff also

4    testified that his notes did not state that he had submitted grievances requesting the 837 Crime

5    Report.

6    When asked why he wrote a letter to Corcoran requesting a copy of the 837 Crime Report

7    after he was transferred to PVSP even though he had been told he was not entitled to a copy of

8    the report, plaintiff responded that he wanted to "keep trying."  Plaintiff did not keep a copy of

9    this letter.  When asked why he did not then "keep trying" by asking a PVSP counselor for a copy

10   of the 837 Crime Report, plaintiff responded that he was "frustrated."

11   Plaintiff testified that defendants submitted interrogatories asking him to state all facts in

12   support of his contention that he was prevented or hindered from exhausting his administrative

13   remedies as to his claims against defendant Parra.  Plaintiff's responses, attached to defendants'

14   exhibit F, are dated February 21, 2004.  Plaintiff listed 6 actions which he claimed hindered his

15   ability to exhaust his claims against defendant Parra.  For example, plaintiff claimed that on April

16   16, 2013, ad seg officers at Corcoran broke his television set, confiscated his food and hygiene

17   items and refused to issue him a pen.  However, plaintiff did not list any of the actions he now

18   alleges in opposing defendants' summary judgment motion, such as the statements allegedly

19   made by the Corcoran ad seg officers that he was not entitled to the 837 Crime Report or the

20   failure of prison officials to respond to his written requests for the report.

21   Plaintiff also admitted that in his opposition to defendants' summary judgment motion, he

22   stated that he did not have to file a separate grievance regarding his claims against defendant

23   Parra, because his claims against defendant Parra were connected to his claim against defendant

24   Guzman, which had been administratively exhausted.  Plaintiff testified that despite this belief, he

25   went on to file grievance 13-2073, raising his claims against defendant Parra, on the advice of his

26   lawyer.

27   ////

28   ////

1        *Testimony of Summer Sandoval*

2        Summer Sandoval is the litigation coordinator for the CDCR Office of Appeals.  In

3    relevant part, Sandoval testified that if an inmate informed her office that they were unable to

4    obtain documents required for their grievance to be processed, her office would first determine if

5    the inmate had shown that he had tried to obtain the documents.  If the inmate proved that he had

6    tried to obtain the documents, her office would contact the appeals coordinator at the prison

7    where the inmate was located in an effort to help the inmate obtain the documents.

8        Sandoval testified that when third level grievances come to her office, they are screened

9    out, rejected or accepted.  If an appeal is accepted, it is then sent to an examiner who renders a

10   decision.  When appeals are rejected, inmates have 30 days to correct the deficiency and resubmit

11   the appeal.

12       Sandoval testified that plaintiff's third level grievance was initially accepted.  However,

13   the examiner who reviewed it decided to reject the grievance because it was missing the entire

14   837 Crime Report.   Sandoval testified that while her office has electronic access to inmates'

15   central files, it does not electronically obtain documents missing from grievances because of the

16   high volume of administrative appeals processed.  Sandoval testified that her office processes

17   about 20,000 appeals every year.

18       Sandoval testified that she assumed that a confidential inquiry would have been conducted

19   at Corcoran regarding plaintiff's claims against defendant Parra.  Sandoval testified that had

20   plaintiff's grievance been accepted and processed, her office would have asked Corcoran for a

21   copy of the confidential inquiry report, as it would not have been provided to plaintiff.  When

22   asked why her office could not have also asked Corcoran for the 837 package report if it was

23   going to ask for the confidential inquiry report, Sandoval responded that Title 15 required

24   plaintiff to submit the entire 837 Crime Report.  Sandoval also testified that she was not sure if an

25   examiner from her office had asked Corcoran for the confidential inquiry report since the appeal

26   was rejected based on plaintiff's failure to include the 837 Crime Report.

27       Sandoval testified that at the third level of review, she was not privy to everything that

28   was available to the second level reviewer.  Sandoval testified that it appeared the second level

13

1    reviewer reviewed the entire 837 Crime Report.  She did not know how that reviewer obtained the

2    entire document if plaintiff only submitted two pages of it.

3           *Testimony of Mary Kimbrell*

4           Mary Kimbrell is the Litigation Coordinator at Corcoran.  Kimbrell testified that the 837

5    Crime Report was electronically scanned into plaintiff's central file on May 16, 2013.  This made

6    the 837 Crime Report available to anyone with access to plaintiff's central file, including

7    counselors at institutions other than Corcoran.  Kimbrell testified that she searched the public

8    records database and found no public records request made by plaintiff for a copy of the 837

9    Crime Report.  Kimbrell testified that other ways for an inmate to obtain a copy of the 837 Crime

10   Report would include filing a grievance, requesting it from their counselor or asking for an Olsen

11   review, i.e., a review of their central file.  Kimbrell testified that there were no records of any

12   grievances filed by plaintiff requesting the 837 Crime Report.

13          Kimbrell testified that during the time plaintiff was housed in Corcoran ad seg in March

14   2013, the policy required that four-ply request for interview forms, i.e., GA-22, be made available

15   to inmates in ad seg.  These forms permitted inmates to retain a copy of their request.  However,

16   she also testified that "half sheet" forms were also available to inmates in ad seg.  The half sheet

17   forms did not allow for inmates to retain a copy of their request.

18          Kimbrell also testified that when the 837 Crime Report was "signed off" on April 29,

19   2013, plaintiff had transferred to PVSP.  Kimbrell testified that at that time, it would have been

20   mailed to the records department at PVSP.  The records department at PVSP would then have

21   given it to plaintiff's counselor to give to plaintiff.  Kimbrell testified that an inmate usually

22   always gets a copy of anything put into their central file as long as it is not confidential.  Defense

23   counsel informed the court at the evidentiary hearing that there is no record of the 837 Crime

24   Report being sent to plaintiff's counselor at PVSP.  Defense counsel informed the court that it

25   was the institution's practice to forward the 837 Crime Report to the prison where the inmate had

26   been transferred.

27          Plaintiff testified that he did not receive a copy of the 837 package from his PVSP

28   counselor.

1    Kimbrell testified that the person who reviewed plaintiff's second level grievance at

2    Corcoran on May 7, 2013 reviewed the entire 837 Crime Report, even though it was not scanned

3    into the prison computer system until May 16, 2013.

4        *Analysis*

5        Under the governing California regulations, prison officials are entitled to screen out an

6    inmate appeal if it is missing the necessary supporting documents. See Cal.Code Regs. tit. 15, §§

7    3084.3(c)(5), 3084.6(b)(7). It is the state's regulations which govern the determination of

8    whether proper exhaustion has been accomplished. See Jones, 549 U.S. at 218; Woodford, 548

9    U.S. at 88.

10       After reviewing the record, the undersigned finds that plaintiff's third level grievance was

11   properly rejected for failing to include the necessary documentation, i.e., the entire 837 Crime

12   Report. Plaintiff's grievance (defendants' exhibit A) alleged that defendant Parra (identified as

13   "Ybarra" in the grievance) orchestrated the attack by inmates Valdivia and Trejo to retaliate

14   against plaintiff for his legal activities. Based on these allegations, it was reasonable for officials

15   at the third level of review to want to review the entire 837 Crime Report, which described the

16   investigation of the incident. Plaintiff submitted only two pages from the report. The entire 837

17   Crime Report, defendants' Exhibit D, is 33 pages long.

18       Although the grievance was rejected, the third level response informed plaintiff that he

19   could resubmit the grievance after obtaining the missing documents. While the section of the

20   response advising plaintiff how to proceed could have been worded more clearly, it did advise

21   plaintiff regarding what steps he could take if he wished to pursue his grievance. Thus,

22   administrative remedies were still available to plaintiff.

23       The undersigned is troubled that the prison official reviewing plaintiff's second level

24   grievance at Corcoran apparently independently obtained the entire 837 Crime Report to review,

25   whereas the prison official reviewing the third level grievance did not. However, witness

26   Sandoval testified that her office reviews approximately 20,000 third level grievances per year.

27   Based on that volume, Sandoval testified that her office was unable to independently obtain

28   documents missing from grievances, nor did Title 15 require her office to do so. For these

15

1   reasons, the undersigned finds that the rejection of plaintiff's third level grievance for failing to

2   include the entire 837 Crime Report was reasonable.

3        Moreover, it is clear from the testimony of Mary Kimbrell that plaintiff could have

4   obtained the 837 Crime Report had he requested it from his counselor, by way of a grievance or

5   request for interview form 22, or through an Olson review.  In other words, the entire 837 Crime

6   Report was available to plaintiff.

7        Plaintiff claims that prison officials thwarted his ability to obtain the entire 837 Crime

8   Report.  In particular, plaintiff testified that officers in the Corcoran ad seg told him that he was

9   not entitled to a copy of the 837 Crime Report because he was the victim.  Plaintiff also testified

10  that he submitted a Request for Interview Form 22 and several 602s while housed at Corcoran

11  requesting a copy of the 837 Crime Report, but received no response.  Plaintiff also testified that

12  he sent a letter to the Corcoran appeals coordinator following his transfer to PVSP requesting a

13  copy of the 837 Crime Report, but received no response.  For the reasons stated herein, the

14  undersigned does not find plaintiff's testimony credible and is not persuaded by these claims.

15       While plaintiff alleges that he submitted several written requests in an attempt to obtain

16  the 837 Crime Report, he submitted no documentation supporting this claim.  Plaintiff admitted

17  that the journal that he kept regarding the claims raised in the instant action did not include the

18  names of the Corcoran ad seg officers who told him that he was not entitled to the 837 Crime

19  Report or any notes regarding the written requests he made for the report.  In addition, while

20  plaintiff testified that the Corcoran ad seg did not provide Form 22s forms that included copies

21  for inmates to keep for their own records, Kimbrell testified that it was the policy for ad seg

22  inmates to be provided with 4-ply GA-22 forms.

23       Plaintiff's failure to notify the CDCR Office of Appeals that he could not obtain a copy of

24  the 837 Crime Report, after having his third level grievance rejected for failing to include the

25  report, is also puzzling.

26       Plaintiff's claims that prison officials interfered with his attempt to obtain the 837 Crime

27  Report by failing to respond to his written requests for the report and by wrongly informing him

28  that he was not entitled to it is also undermined by his failure to list these claims as reasons for his

16

1    inability to exhaust administrative remedies in response to defendants' interrogatories.

2         Similarly, plaintiff's testimony concerning his alleged attempts to obtain the 837 Crime

3    Report contained numerous inconsistencies:  (Plaintiff made "a bunch of verbal requests" for the

4    837 Crime Report at his cell door, but could not remember the names of the ad seg officers who

5    told them that he was not entitled to the 837 Crime Report.  Plaintiff testified that he could not

6    remember if he submitted his grievances requesting the 837 Crime Report before or after he was

7    told that he was not entitled to a copy of the 837 Crime Report by the ad seg officers.  Plaintiff

8    testified that he did not think he ever wrote to the Office of Appeals to explain the efforts he made

9    to obtain a copy of the entire 837 Crime Report or to ask for assistance in obtaining the report.

10   When asked why he wrote a letter to Corcoran requesting a copy of the 837 Crime Report after he

11   was transferred to PVSP even though he had been told he was not entitled to a copy of the report,

12   plaintiff responded that he wanted to "keep trying."  Yet, plaintiff did not keep a copy of this

13   alleged letter.  When asked why he did not then "keep trying" by asking a PVSP counselor for a

14   copy of the 837 Crime Report, plaintiff responded that he was "frustrated.")

15        Based on the evidence, the undersigned finds that this is not a case where prison officials

16   engaged in misconduct in handling plaintiff's inmate appeals, told plaintiff that there were no

17   available administrative remedies, or pointed plaintiff in a direction that would cause him to fail

18   in his attempts to properly exhaust his administrative remedies.  See Albino, 697 F.3d at 1034.

19   For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust

20   administrative remedies as to his claims against defendant Parra.  On this ground, defendants'

21   summary judgment motion as to defendant Parra should be granted.

22        Accordingly, IT IS HEREBY RECOMMENDED that defendants' summary judgment

23   motion (ECF No. 50) be granted as to plaintiff's claims against defendant Parra on grounds that

24   plaintiff failed to exhaust his administrative remedies.

25        These findings and recommendation are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

27   after being served with these findings and recommendations, any party may file written

28   objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

2   objections shall be filed and served within fourteen days after service of the objections.  The

3   parties are advised that failure to file objections within the specified time may waive the right to

4   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5   Dated:  December 22, 2015

6

7   _____
    KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

8

9

10

11  Cor1551.evi

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28