UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY M. CORDERO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NICK GUZMAN, et al.,<br><br>　　　　　Defendants. | No. 2: 13-cv-1551 JAM KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　　Plaintiff is a state prisoner, proceeding through counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. This action is set for jury trial before the Honorable John A. Mendez on July 24, 2017.

　　　Pending before the court is plaintiff's motion for sanctions due to alleged evidence spoliation. (ECF No. 156.) On June 15, 2017, a hearing was held before the undersigned regarding plaintiff's motion for sanctions. Meryn Grant and Christopher Soper appeared on behalf of plaintiff. Deputy Attorney General Diana Esquivel appeared on behalf of defendant. For the reasons stated herein, and at the hearing, the undersigned recommends that plaintiff's motion be granted in part.

////

////

1

II. Discussion

    A. Background

The only remaining defendant in this action is N. Guzman. Plaintiff alleges that on November 9, 2011, he and inmate Haxton had an altercation. Plaintiff alleges that during the altercation, defendant intentionally shot plaintiff in the head with a round from his 40 mm launcher, causing plaintiff to suffer great bodily injury. Defendant claims that he was aiming for plaintiff's lower body when he fired the round, but plaintiff fell as he fired, and the bullet accidentally hit plaintiff in the head.

In the finding and recommendations addressing defendant's summary judgment motion, the undersigned also observed that a bent front bead sight was found on the launcher during an inspection of the 40 mm launcher after the shooting:

> The undersigned also notes another possible scenario suggested by the evidence, which is that the bent front bead sight caused the shot to hit plaintiff in the head, even though defendant aimed for plaintiff's calf. This issue has not been sufficiently addressed by the parties.
>
> However, according to defendant Guzman, he inspected the weapon before his shift and apparently did not notice the bent front bead sight. Defendant Guzman also opines that the bent front bead sight did not affect his aim for plaintiff's left calf.
>
> Whether the bent front bead sight affected the aim of the weapon may require the opinion of an expert witness. Fed. R. Evid. 701, 702. The undersigned also notes that the prison official who took possession of the weapon after the incident noticed that the front bead sight was slightly bent during an inspection. (ECF No. 50-12 at 56.) If this official noticed the bent front bead sight, then it is unclear why defendant Guzman did not notice it during his inspection.

(ECF No. 65 at 21 n.3)

In the pending motion for sanctions, plaintiff alleges that on February 22, 2017, his counsel learned that the 40 mm launcher had not been preserved. (ECF No. 156 at 10.) It was later determined that the launcher had been released from the evidence locker on August 31, 2016, and repaired. (Id.) For these reasons, plaintiff's forensic expert, R. Wyant, could not inspect the launcher. (Id.)

////

2

In the pending motion, plaintiff requests the following adverse inference instruction as a sanction for the spoliation of the 40 mm launcher:

> Officer Guzman and High Desert State Prison had a duty to preserve relevant evidence in the condition it was in immediately following the November 9, 2011 incident, including the 40 mm Launcher used to shoot Mr. Cordero. When that weapon was collected from Officer Guzman immediately after the shooting, it was defective. The front bead sight, which must be used to aim the weapon, was bent to the left. This evidence was destroyed in violation of California Department of Corrections Policy, when the 40 mm launcher was cleaned and the front bead sight repaired. The jury may presume that the evidence from the 40 mm launcher would have been favorable to Mr. Cordero's claim of excessive force and unfavorable to Officer Guzman's defense in the following ways: 1) Officer Guzman should have observed the defective bead sight during his inspection of the weapon; 2) Officer Guzman would have noticed the defective bead sight if he properly aimed the 40 mm launcher; and 3) with the defective bead sight, Officer Guzman could not have had reasonable certainty that he would hit Mr. Cordero's lower zone, which is required by CDCR Policy to fire a 40 mm launcher.

B. Legal Standard

Federal trial courts are vested with a wide range of inherent powers that allow them to govern their courtrooms and the litigation processes before them. Chambers v. NASCO, 501 U.S. 32, 43 (1991). Inherent powers must be used only "with restraint and discretion." Id. at 44. An example of these inherent powers is the discretionary power of a federal trial court to levy appropriate sanctions against a party which prejudices its opponent through the spoliation of evidence that the spoliating party had reason to know was relevant to litigation. See Glover v. BIC Corp., 6 F.3d 1318, 1329-30 (9th Cir. 1993). Appropriate sanctions for spoliation, when found, range from outright dismissal, an adverse inference jury instruction with respect to the spoliated evidence, exclusion of a category of evidence, or monetary sanctions (including attorneys' fees). See id.; Leon v. IDX Sys. Corp., 464 F.3d 951, 958, 961 (9th Cir. 2006).

To impose evidentiary sanctions for spoliation, the court need not find that the spoliating party acted in bad faith; willfulness or fault can suffice. Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 368 n.2 (9th Cir. 1992) (citation omitted); Glover, 6 F.3d at 1329. The court need only find that the offending party destroyed evidence with notice that the evidence

was potentially relevant to the litigation. Leon, 464 F.3d at 959; Glover, 6 F.3d at 1329 (internal quotation marks omitted) ("Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation."); cf. United States v. $40,955.00 in U.S. Currency, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of business.").

The adverse inference instruction is "an extreme sanction and should not be taken lightly." Moore v. Gilead Scis., Inc., 2012 WL 669531, at *5 (N.D. Cal. Feb. 29, 2012). "A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006) (citation and internal quotation marks omitted). "[T]he presence of bad faith automatically establishes relevance; however, when the destruction is negligent, relevance must be proven by the party seeking sanctions." S.E.C. v. Mercury Interactive LLC, 2012 WL 3277165, at *10 (N.D. Cal. Aug. 9, 2012) (citation and internal quotation marks omitted).

In addition, "[t]he imposition of a harsh sanction such as ... an adverse inference instruction requires an analysis of the prejudice suffered by the non-spoliating party." Moore, 2012 WL 669531, at *5 (citing Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995)). "The prejudice inquiry looks to whether the spoiling party's actions impaired the non-spoiling party's ability to go to trial or threatened to interfere with the rightful decision of the case." Leon, 464 F.3d at 959 (citation omitted); see also Ingham v. United States, 167 F.3d 1240, 1246 (9th Cir. 1999) (citation omitted) ("To be actionable, the spoliation of evidence must damage the right of a party to bring an action.").

////

////

C. Analysis

As discussed above, a party seeking an adverse inference instruction must demonstrate 1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; 2) that the records were destroyed with a culpable state of mind; and 3) relevance.

The parties do not dispute that defendant had an obligation to preserve the launcher at the time it was removed from the evidence locker and repaired.

At the hearing, plaintiff's counsel stated that she was not alleging that the removal and repair of the launcher was intentional. The evidence indicates that the removal and repair of the launcher was negligent.[1] Because the spoliation was negligent, plaintiff must demonstrate relevance, i.e., prejudice, in order to be entitled to an adverse inference instruction.

The undersigned is troubled by removal of the launcher from the evidence locker and its repair. However, for the reasons stated herein, plaintiff has not demonstrated sufficient prejudice to warrant an adverse inference instruction.

As discussed at the June 15, 2017 hearing, plaintiff's theory of the case has been that defendant intentionally shot him in the head in violation of the Eighth Amendment. Plaintiff does not allege a claim for negligence based on the bent front bead sight, including defendant's alleged failure to adequately inspect the weapon. In addition, the defense is not based on the bent front bead sight.[2] Thus, evidence regarding the bent front bead sight is not directly relevant to plaintiff's theory of liability. For these reasons, an adverse inference instruction is not warranted.

---

[1] Defendant was unable to produce the evidence preservation letter defense counsel allegedly sent to the High Desert State Prison ("HDSP") Litigation Coordinator regarding the 40 mm launcher. However, defendant filed the declaration of HDSP Litigation Coordinator Amrein. (ECF No. 160-2.) Litigation Coordinator Amrein indicates that she knew of her duty to preserve the launcher as evidence in this case. (Id.) Litigation Coordinator Amrein states that she inadvertently approved the request for removal of the launcher from the evidence room. (Id.) Litigation Coordinator Amrein's failure to preserve the launcher may be imputed to defendant and defense counsel. See Pettit v. Smith, 45 F.Supp.3d 1099 (D. Az. 2014); Muhammad v. Mathena, 2016 WL 8116155 (W.D. Va. 2016). After reviewing the entire record, the undersigned finds no evidence of intentional spoliation.

[2] As discussed above, defendant claims that he aimed for plaintiff's lower body, but plaintiff fell as he fired his shot. At the June 15, 2017 hearing, defense counsel confirmed that the bent front bead sight is not relevant to the defense.

While plaintiff has not demonstrated prejudice sufficient to warrant an adverse inference instruction, it would be unfair to allow defendant to benefit from plaintiff's inability to examine the launcher prior to its repair. For the following reasons, the undersigned recommends the following evidence preclusion sanctions.

In particular, the undersigned recommends that defendant be precluded from presenting non-expert and expert evidence in his case-in-chief regarding whether the front bead sight was bent and whether it caused the shot to go errant. The undersigned recommends that nothing preclude plaintiff from introducing, in either his case-in-chief or cross-examination of witnesses, evidence regarding the bent front bead sight. In the event plaintiff introduces evidence regarding the bent front bead sight, including during cross-examination of defense witnesses, defendant should be allowed to respond. Such response may potentially include a defense expert opinion regarding whether the front bead sight was bent after being discharged.[3]

Finally, at the June 15, 2017 hearing, plaintiff requested that the officer who examined the 40 mm launcher after the incident, i.e., Officer Lindsey, be precluded from testifying regarding the launcher other than the statements made in his report. The undersigned cannot issue an order regarding whether Officer Lindsey's testimony may or may not deviate from his report. Rather, this is an issue to be determined by the trial judge after hearing Officer Lindsey's testimony, including the questions asked on cross-examination.

Because the trial is set for July 24, 2017, the undersigned orders objections due within seven days of the date of this order. In addition, because both parties have filed extensive briefing regarding the pending motion, objections are limited to ten pages. Rather than submitting additional exhibits in support of their objections, the parties may refer to previously submitted exhibits.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motion for sanctions (ECF No. 156) be granted in part and denied in part: plaintiff's motion for an adverse inference

---

[3] Neither side's experts had an opportunity to examine the 40 mm launcher prior to the sight being repaired. While the parties' experts may have an opinion regarding the timing of the damage to the front bead sight, whether such an opinion (not based on an examination of the 40 mm launcher) is admissible may be the subject of a motion in limine.

instruction should be denied; and, as discussed above, defendant should be precluded from offering non-expert and expert evidence in his case-in-chief regarding whether the front bead sight was bent and whether it caused the shot to go errant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within *seven* days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within *five* days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 16, 2017

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Cor1551.san